May it please the court, thank you for hearing this appeal. I am with a law firm in Baltimore, Maryland. Mr. Murray is local to San Francisco. As I said, there's two general arenas of appeal, one dealing with the maritime issue, another dealing with the rejection of an affidavit and evidence. I would like to reserve three minutes for rebuttal. In general overview from the maritime standpoint, we seek the reversal of the decision below summary judgment based on the fact that we believe the agreement of the city with conditions for violate the provisions of what's known as the Rivers and Harbors Act, which says that the only fee that can be charged to a vessel is one solely related to the services provided. Facts and quick summary are Little Man in a Boat... Counsel, counsel, could I interrupt? Counsel, I'm up here in Alaska. If I could interrupt, we're really familiar with the facts and I have a lot of questions about, and I bet my colleagues do too, about the statute, but preliminarily about whether there's a private right of action. So could you focus there? Could you start? On a private right of action? Yes. Well, in the case, Your Honor, of the cruise lines versus Juneau, Alaska, that issue was addressed. And in that case, the court distinguished, actually found that we're standing on this statute. Bring it back. Okay, I'm not I'm not talking about standing. Let me ask you preliminarily, because I don't want to get in your way too much. I only know of one case anywhere where this has directly been addressed, whether there's a private right of action. That's the case you just went to, Judge Holland's decision in cruise lines. Do you know of anything else I missed? No, I'm unaware. Other than in the case of the state of Illinois versus Wendella, there was an enforcement action, which appareled because, of course, that's not a federal court action. But we're unaware, on the other hand, of any situation where there has been not been held not to be a standing on right of action. Okay, so in the case you're talking about, Judge Holland, the cruise lines case, did decide there's a private right of action. And and I think what he decided there really is that the statute was intended to benefit. He's impliedly applying the court C.O.R.T. test. And the first part of that is really, really goes to what Congress intended. And the first part, of course, looks to benefit. And Judge Holland decided the statute benefits vessel owners. Right. But it seems to me a strong argument can be made that it's this statute reads a lot like the one in Sierra Club, which which where the United States Supreme Court looked at a different provision, Section 10 of the same statute that we're talking about and reached the opposite conclusion. I'd like to hear you tell me what's your best argument that we should agree with Judge Holland and not with the Supreme Court in the Sierra Club case? Thank you, Your Honor. We basically track the same thing as in the cruise line. And that is the issue is whether this is intended to protect a specific group. It would seem to me that Little Boat falls into that specific group of allowing maritime commercial activities conducted without the inhibition of having all of these encumbrances that they would have to satisfy every single location. I would say that statute in the Sierra case was one which would be a general statute public benefit as to generally blocking waterways. But there were no specific individuals involved in this case. Not only did it apply to us, but we actually pay the tax that was required, and it would be difficult to believe that if you have a fee which is prohibited by federal law and you're required to pay it, that you as a payee not be a person that's standing in intention to have forced right. Again, I'm not so interested in standing as I am whether there's a private right of action. And it is true. And Judge Holland looked at this and he said a beneficiary would be cruise ships and vessels. But I think a strong argument can be made, and I just wanted to give you a chance to oppose, that what the statute is doing looks and feels a whole lot like Sierra Club because Congress is prohibiting, generally prohibiting certain conduct. And there's a strong argument that was for the general welfare. Do you want to speak to that? Well, again, I have to echo what the cruise line case logic was, and that is that it is intended so that an individual vessel that calls on one port and another port and another port isn't paying 150 percent of its burden to that port such that it would be unable to conduct any business. Well, you could have brought, in fact you did bring a commerce clause argument, but you're not pursuing that on appeal, right? Well, I was to say we didn't get to the Congress, to the commerce because, in effect, we don't need to get to the constitutional amendment because we think the statute is so clear. And in fact, when it comes to the commerce clause, I really don't understand the court's reasoning that this is somehow a marketplace decision rather than when you look. I'm not sure I do. I'm not sure I do either. But before we spend any of your time on that, am I right that you did not appeal the commerce clause ruling? That's correct. Okay. Can I ask you a question, Mr. Beers? I know you've been discussing the cruise line case out of Alaska, and I think Judge Kristen has been trying to ask questions or get answers regarding the California versus Sierra Club case. Let's just make an assumption that the text of the statute doesn't create an implied right, and we have to look at the legislative history here. Can you point to me anything in the legislative history that supports, you know, your case here, what in the legislative history do you think is most helpful to you? Well, we think the part that's most helpful to us is the conference report that says, the purpose of 4B was to clarify existing law with respect to constitutionally permitted fees and taxes on vessels, but also to prohibit fees for vessels simply passing through. And so we feel that we fall squarely within purpose, which is based upon centuries-old admiralty law that was basically come back. And again, I don't have time to go through 200, but I think that, again, in the cruise line case, they said it well, the case law over 150 years unequivocally supports the proposition that in order for a fee imposed upon a vessel to be permissible under the tonnage clause, there must be compensation for a service rendered to the vessel itself. Then if that is the purpose of the act, then the statement that the purpose of the act is to clarify existing law, that is existing law. And it makes a lot of sense because at every single location, we're free to put 150% of the cost of the docking, the services. If a vessel went from South Beach Harbor to Sausalito, to what it cost, maritime travel would be encumbered. So can I ask you a little bit more about that? Because as I read the briefs, trying to figure out exactly what payments were to be made pursuant to the landing agreement became really confusing. And in fact, in virtually your argument about what you would have to pay by way of fees and also the cities are like ships passing in the night. And in particular, what you were arguing just here is that if a boat was on a navigable water and did not land at South Beach, you still, as the boat owner, would have to pay the gross receipts. Is that correct? Well, no. I mean, what we think is the statute says that it makes clear that you can't put a fee on boats that are simply passing by and you cannot put a constitutionally prohibitive fee on vessels that dock. And so it covers both money that the boat might receive by going between Sausalito and Oakland with no contact whatsoever with South Beach Harbor. But assuming that you're paying the landing fee, you pay the landing fee for South Beach, and then if you interpret gross receipts as including gross receipts that you have made from trips other than connected to a landing at South Beach, then you are essentially assessing a tax on a shipment which does not go into landing is gross receipts in an exaggerated sense. And so basically, you are assessing something on transportation which does not have a connection to the landing. Is that correct? Yes, you're correct. The statute requires that the fee be fair and equitable, used solely to pay the cost of a service. And when the fee is based on a percentage of your gross, it by definition has no relationship to service. In other words, your services, the expense of your service does not increase because 100 passengers bought margaritas on the boat. Okay, so can I just ask you a hypothetical? Let's say that the boat came in and landed one day. On the next day, the boat went in a different direction, did not land at all. But the gross monthly receipts, which form the basis of the 7%, which gets paid to the landing, is broader than just what was paid for an individual landing, according to your theory. Is that right? Well, that is correct. That is the fact. As defined, if you look at the definition of gross, it says from landing site or on vessels calling on the landing site, I succeed in a month. So actually, I'm looking at the landing agreement and the language of the landing agreement refers to gross revenues as in fact connected to percentage of the fee for excursion landings for each calendar year. Doesn't that suggest that the 7% fees are for revenue only for those times when the boats landed at South Beach? That's not the way we read it. We read it as far broader. We read it as an integration clause in the document that says that we believe definitionally it's overbroad if they're only collecting or contacting. Your opposing counsel took exactly that position and said that only this 7% is only for those trips which have a landing at South Beach and that any other trip that the boat may have made over that month period is irrelevant. Do you disagree? Well, I disagree with the reading of the agreement because the agreement says all gross revenue for the month and even if that were the case, the city still could not reconcile the methodology in which you agree that it has to be related to the service of the vessel. There's way the service of the vessel can be a function of how much gross receipts, even if those gross receipts are only from the South Beach landing. If you put 100 kids on at $5 for school kids, that's $500. It's a $35 fee. If you put 100 people on for a wedding at $250, then that's a $2150 fee. So you have a $50 fee when you have the identical service to the vessel. It doesn't report to the requirement of the act that says there needs to be a proportionality. Your honors, I see that my time is up. Excuse me, I'd like to ask a follow-up question. Just if I could, Judge McGeo, very, very quickly. Yes. Sir, if we decide there is a private right of action and if we decide that the statute, the Rivers and Harbor Act does apply, which would be contrary to the district court's ruling, is it your contention that we should reach the reasonableness of fees in the first instance or remand for the district court to do that? It's our position that methodology in the agreement, the 7%, no matter how it is... Sir, that's not... I don't think my question... We didn't communicate. My question is, if we agree with you that you have a private right of action, and if we disagree with the My understanding is that the district court did not decide. The Rivers and Harbor Act has this express exception that says as long as the reasonable fees can be imposed, which is what Judge Sessions was just getting at, is it your position we should reach the reasonableness of the fees or remand for the district court to do that in the first instance, please? Our position is that the remand is the second choice fallback if, in fact, there can... Even if there's a remand, it's a futile effort because the city can never rescue itself from the fact that its formula for what is charged can never be related directly to the service. I'm understanding you want us to reach the issue. That's all I'm trying to get at. You want us to decide reasonableness? That's my question. Our request is that you find that the methodology is as a matter of law, contrary to the requirements of the act. If you fail to do that, I guess we would have a remand because the court can never reach the analysis of the numbers. Yes, thank you. Thank you, Judge McGinn. Judge Sessions, do you have any questions on the other side? No, I don't. Okay. Thank you, then. I'll go to Ms. Steele and I'll give you a couple minutes. You can decide if Mr. Murray wants that time or if you want that time, Mr. Behrs. Thank you, Your Honor. Good morning, Your Honors. May it please the court, Tara Steele for the city and county of San Francisco. I'd like to start, if I could, with the questions that Judge Sessions was asking towards the end of that argument. I just want to make it crystal clear that the court does not charge a 7% gross revenue fee on any journey that does not involve a landing at South Beach Harbor. I can tell you that unequivocally, and the language of the landing agreement makes that clear itself. Ms. Steele, have you had a discussion with Mr. Behrs about that or Mr. Behrs, there does seem to be some fundamental sort of misunderstanding of what the fees are, or I'm trying to understand the same thing that Judge Sessions was asking about. Is there a breakdown in communication or just different views? What have you charged and how do you charge them? Can you just break that down for me? Sure. In terms of the communication, this was not an issue raised below before the district court at all. I think that was because when the landing agreement came out, when the court provided the landing agreement to the charter vessels, it was explained that this landing fee only applied to landings at South Beach Harbor. I think that was everyone's clear understanding below. So this was an issue that was frankly surprising to me that it came up on appeal. But I don't think it was a matter of miscommunication. I think it's a matter of new counsel having a new theory. But again, it's just simply not how we charge the fee. So what happens just mechanically is vessels land and pay. There's a base landing fee. That's the minimum amount. And then there's a monthly say true up statement that vessels submit where they say, okay, here's how much I paid in the base landing fee each time I landed. And here's how much my gross revenues were for those landings at South Beach Harbor. And if there's a difference, the vessel pays the greater of the 7% fee or the base landing fee. So that's mechanically how it works. But again, just to be very clear about this, there is not a charge on vessels not using the landing service. So can I ask you just a little bit more about how you charge this? So assuming again, that a boat arrives one day, that landing fee is $110 plus the 7% for the gross revenues for that landing, right? Is that correct? Yes. You don't go back to the gross revenues of the company for the entire month. Because if you did that, then you would include gross revenues from trips that did not include a landing at South Beach. Is that right? Yes, you are. I mean, you're diametrically opposed to what the other side has said, what they anticipate the fees to be. Sorry, I didn't mean to interrupt you. I'm sorry. No, no, I'm just a little surprised that we get to the appellate level. And there seems to be some confusion about exactly how you assess fees. I mean, as I said, Your Honor, this was not an issue raised below. But I think the evidence is clear based on the language of the agreement. And in fact, the declarations that we submitted show that we charge the fee, the 7% fee is only based on the revenues generated through landings at South Beach Harbor. It does not include a company's complete total gross revenue. It's only for the landings at the harbor. Well, I assume it also includes any profits that the boat made by selling drinks on the bay or making any kinds of additional income on the bay as they approached the landing. Well, that's true, Your Honor. It's for the gross revenues derived from trips taken to or from South Beach Harbor. But there has to be a connection to the landing. Pardon? I'm just curious, if the landing fees apply here, what if the city raised the landing fees to $500 or 50% of the revenue? Would the vessel operators like Little Man have no recourse? No, Your Honor. I mean, certainly there is a recourse, right? And in this case, Little Man brought a Commerce Clause claim, a Tonnage Clause claim. And that would provide, you know, under both of those constitutional standards, there are limitations on the fees. They have to be fair and equitable and related to the cost of services provided. It's not that we can pick any number. In fact, the statutes are exactly coextensive, aren't they? They are, Your Honor. In fact, many courts have found that the analysis is duplicative of the Commerce Clause and the Tonnage Clause analysis. Except in this case, they're not. I mean, I think that's exactly why this doesn't get teased out. Typically, both claims are brought or just the Commerce Clause claim is brought. But what we have, the Commerce Clause case is not on appeal. So we really have to decide, it seems to me, there's a private cause of action just under the Rivers and Harbors Act. That's true, Your Honor. I don't think the legal, the burden, the limitations posed by the Rivers and Harbors Act duplicate what would have been, what is imposed under the Tonnage Clause, right, for instance, and the Commerce Clause. In both of those, in both of those, the constitutional analysis is that the fees have to be reasonable, fair, equitable, and not discriminated against under State Commerce. So the burden posed by the statute is really meant to codify with the Commerce Clause. Right. So, but you're not really getting to the point, I don't think, that I'm trying to get at, which is, I, that's why I started with, they're co-extensive, right? But they're not here in front of, they've lost on the Commerce Clause issue in the trial court, and they have not appealed that issue. And they didn't appeal the Tonnage Clause issue. So we're here, and it seems to me that the whether there's a private right of action under the Rivers and Harbors Act, but you seem to be not embracing that notion. So what am I missing? Oh, no, no, sorry. I didn't mean to. Sorry. What I meant to say. It's not where you started, Counsel. You wanted to talk about the reasonableness of fees. So I am left somewhat aghast. Oh, sorry. I did not mean to suggest that we should peek in there. I just, it was on my mind because it was the last questions that we had from Judge Sessions. So I wanted to make it clear what the fee is. Okay. So I think, can I, can I, your time is really ticking. So can I get you to focus on, if I would, I don't mean to be rude, but I, I think this is a terribly interesting and important case. And so here's the deal. I think there's only one jurisdiction that's ever talked about whether there's a private cause of action. Opposing Counsel was very kind to tell me he doesn't know of any other case other than cruise lines. Do you know of one? No, I don't know of any other case that squarely addressed the question of whether there's a private right of action under this provision of the Rivers and there's some cases that have expressed doubt about that prospect, but none. Right. So, so can you tell me, and Judge Holland, right. Reach the opposite result. Can you please tell me, why do you think Judge Holland was wrong? Yes, I would be happy to. So first, the Ninth Circuit tells us that the key inquiry here is, did Congress intend to create a private right? And here there's many reasons to think Congress didn't. First, Congress is silent about the remedy. It doesn't, the Congress doesn't provide one. That's one of the court factors. And that silence is particularly striking here, given that the Supreme Court had found a very similar provision of the same act, not to provide a private right of action. Well, that's section 10. If you're talking about the Sierra Club, is that what you're talking about? Yes. Okay. So, but in the Sierra Club section 10, it is truly a command, sort of, thou shalt not, nobody can construct an obstruction in a waterway, right? Right. Yours is a little tougher because it, opposing counsel's right. It definitely talks about, you can't charge that group of people and that group of people are vessel owners and they're passengers. So he's arguing that makes me a beneficiary of this statute, the intended beneficiary. Can you please tell me why you think that's wrong? Yes, Your Honor. There's nothing in the legislative history that suggests that Congress was concerned with individual rights or voters' rights. What Congress seemed to be concerned about was the same principles animating the tonnage clause and the commerce clause, which is the free flow of commerce along the coast. And I think there's plenty of case law that tells us that the tonnage clause and the commerce clause are not about individual voters' rights, but they're about the free flow of commerce. Right. So much case law that we probably don't need to talk about it. So if that's right, and these are co-extensive, what's your view, please? Why do we need these amendments in 2002? What's Congress trying to do right here? Well, Congress tells us what they were trying to do. And that was- They tell us several different things. Go ahead. Congress tells us that they already know that charging fees to a vessel simply sailing by already is a violation of the commerce clause and tonnage clause, but they- Right. So that point right there, so they didn't need any, they already have that in the commerce clause. So why do they need this? Right. But what they tell us is that they wanted to make this crystal clear so they could avoid litigation. They wanted to send a message to the jurisdictions who were charging the fees, stop, so we can avoid litigation. They expressed no interest in creating a new claim. They expressed interest in avoiding a constitutional challenge. And so again, I don't think Congress tells us anything that suggests they intended to create a new private right of action. What they're telling us is they want to avoid litigation under the constitutional rights that already exist. Isn't it possible that the statute we're talking about originally was enacted almost 200 years earlier? And that by the time we got just up to these amendments, the commerce clause jurisprudence had advanced in many, many ways. We all studied in law school to really nail down the extent to which state and local governments can tax and burden interstate commerce, which is some, but not too much. And that was a process of a lot of case law trying to narrow that down. And then they had post 9-11, a statute that was a bit of a relic because it did not allow for that case law. It didn't account for that development in law. I have not heard you argue that anywhere. And I want to give both of you a chance to respond to that. I mean, that's true, your honor. I mean, once you codify a certain provision, it's locked in time, right? You don't allow the flow of the common law to continue to develop. So I would agree with that. What was the status of the Rivers and Harbors Act immediately prior to the amendment we're talking about, counsel? Did it allow the exception that your client is wanting to take advantage of? You mean the exception to not applying to operations on navigable water? The exception in 5B that allows cities and local governments to impose reasonable fees. Did that exist before this amendment? The amendment added that entire section. So there was no issue at all before. Right. And so that's my point, right? So when I get up to you say, what were they trying to do when they amended this statute? It's bringing, it seems to me, there's a strong argument being made that what's happening is this very kind of ancient statute is being brought in line with the commerce clause because they are intended to be co-extensive. But I haven't heard you argue that. And I certainly want to hear what opposing counsel has to say. I would agree with that, your honor. Yes. So if there are to be co-extensive, the commerce clause as well as the RHA, to what extent does the fact that there is a private right of action in the commerce clause cases, does that shed light on whether RHA may have been intended to provide a similar private right of action? I don't think so, your honor. And that's no need to add a new federal claim. But that's exactly what Judge Holland decided. What Judge Sessions is positing is exactly what Judge Holland decided. It is, your honor. But I think Judge Holland made a critical error, which is that he analyzed whether Congress intended to preclude a right of action. And that's not what we, that's not the test. The test is, did Congress intend to create one? And there was no need for Congress to create one because already existed under the commerce clause. So what's the RHA for? Who's supposed to, opposing counsel argues if they can't enforce it, nobody can. What's your response to that? Well, that's true, but that's the situation where you don't have a private right of action. As well, where there's a private right of action, could there be public enforcement? Well, yes, your honor. I guess that there could be private public enforcement, but when, when there is no private right of action, that just means that there is no claim under that act. And that's what, that's what the Supreme Court tells us. But again, I would just like to remind the court that Congress did not express any desire to create a private right of action. And in fact, express an interest in avoiding unnecessary litigation under the commerce clause. If they don't have a private right of action under the Rivers and Rivers Act, should they just pursue the commerce clause on appeal here? Yes, your honor. I mean, the remedy would be under the commerce clause or tonnage clause. And as you've noted, they have not appealed either of those decisions from the district court. Are there any other questions? Is there any concluding statement for Steeley? No, thank you, your honor. Okay. Mr. Burse or Mr. Murray. I'm sorry, Burse. I'll give you two minutes to respond. Thank you, your honor. I would like to, you know, suggest that Judge Kristen was on the right track. And that is, what is the purpose of that? What is the context when this was passed? And the context was, and again, I know this from, it's not in the record, but at the time there were certain attempts for boats going through locks to charge. And at that time, there was a realization that the tonnage clause pretty much left over and no guidance, no real history of guidance. So I would submit that the purpose of 5B was to provide to the general public, the maritime public, to the courts a specific guideline by which they could measure if a fee that they were charging was appropriate under the tonnage clause or not. And it was amplified tonnage clause to make clear that commerce cannot happen if everybody, so to speak, piles on and a vessel shows up on their dock. And so this was the formula provided to say, you can charge a service fee for the service to this vessel. You can charge a little bit on top of that if it's for general safety and charge a little bit for general safety. And that was the guidelines that we took a look back to what the cost was, because if every port lived by those rules, there could be commerce. If every port, so to speak, piled on at 150%, commerce could be encumbered. In fact, right here where you have the city saying, we want you to, you know, if you're going to dock here, we need you to pay the mandated health benefits, the source hiring, the public transportation programs. If every single port had all of those add-ons as a condition of docking support, maritime transportation would not occur. That's why the law is absolute. It says no taxes or other impositions whatsoever. So it gave a positive and a negative construction support as to what could charge and what could not be charged. And obviously again, you know, we say that the number of margaritas sold or drinks or suntan lotion sold on the cruise has no relationship to the service. It cannot be a methodology used to comply with the rivers and Of course, the problem that you have here is the district court really did not address the question about the reasonable costs. And you're asking an appellate court to make this assessment without having the underlying record as to what expenses there were, how relevant those expenses were. And isn't the more appropriate remedy at this particular stage, assuming that the matter matters to be remanded to remand that issue for a court determination about the reasonableness of costs. Your honor, I have to respectfully disagree with that because our position is that the methodology would still be infirm, even if they went back and they said, well, here's all of our costs. The fact that you're still basing service to the vessel upon a random number unrelated to the service would put us right back here in court again, as long as they have this provision that says we'll take a percentage of your gross revenue. And to that point, and not to, these are deductives they say, if you go to page BLI-4, it says that the landing fee is a percentage in any, a percentage fee for a certain landing calendar month. If it exceeds that much, it is the gross revenues for any month. And I believe we probably won't resolve it. We think that's more. Of course, actually the landing, then you, then you turn to the landing agreement and it relates those particular gross revenues to excursion landings. I mean, that's specifically within the landing agreement. And as a result, it would seem that your argument that a boat floating around the bay cannot charge fees, which will then be recovered by San Francisco. It's only when that boat lands during that particular excursion. It seems to me right from the language of the landing agreement. But you disagree, so. All right. Thank you. I don't think there's anything else. Judge Christin, do you have any further questions? Nothing further. Thank you all so much. Judge Sessions? Yes, nothing further. Thank you. All right. Well, thank you all very much. Appreciate the oral argument presentation on this interesting case. The case of Little Man in the Boat versus the City and County of San Francisco is now submitted. And that concludes our session here today. Thank you very much. Thank you, Mary. Thank you. The floor for this session stands adjourned.
judges: Murguia, Christen, Sessions